```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF MISSOURI
                    EASTERN DIVISION
```

**DEBORAH L. DAVIS,**              )
                                   )
        **Plaintiff,**         )
                                   )
     vs.                          )     No. 4:04CV1519-DJS
                                   )
**FEDERATED RETAIL HOLDINGS, INC.,** )
f/k/a The May Department Stores    )
Company,                           )
                                   )
        **Defendant.**         )

<u>ORDER</u>

      Plaintiff Deborah Davis brings this action against her former employer, The May Department Stores Company, now known as Federated Retail Holdings, Inc., alleging that defendant violated the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §2611 *et seq.* Plaintiff alleges that she was hired by defendant in 1977 and performed her job satisfactorily until her termination on January 24, 2004. In her first amended complaint, plaintiff claims that beginning in March 2001, she began taking intermittent leave under the FMLA in order to care for her mother who suffered from serious health conditions, but that in retaliation for plaintiff's availment of her FMLA rights, her supervisor, Daryl Gehbauer, transferred plaintiff in July 2002 from the position of Manager of Project Accounting to the position of Manager of Financial Reporting, making plaintiff more vulnerable to lay-off in the event

of a reduction of force, and that Gehbauer thereafter chose plaintiff for lay-off in January 2004 when defendant had a reduction in force.

The matter is before the Court on defendant's motion for summary judgment. Plaintiff's claim is premised on her assertion that both the 2002 job transfer and the 2004 lay-off were in retaliation for plaintiff exercising her rights to FMLA intermittent leave. The Court assumes for purposes of the instant motion that plaintiff's admittedly lateral transfer to the position of Manager of Financial Reporter can constitute an adverse employment action, even though the negative consequences asserted by plaintiff -- that the revamped position made plaintiff more vulnerable in the event of a future reduction in force -- were only potential and contingent. For the job change to be actionable as retaliatory under the FMLA as pled by plaintiff, namely because Gebhauer took the action "in retaliation for Plaintiff having taken intermittent FMLA leaves of absence since March, 2001," Gehbauer would have had to know, at the time he transferred plaintiff, that plaintiff had in fact been taking leave under the FMLA. First Amended Complaint [Doc. #18], ¶13.

The summary judgment record the parties have created does not support plaintiff's assertion that she began taking FMLA leave in March 2001. Although plaintiff filed paperwork in February 2001 to support requests for intermittent leave to care for her infirm mother, defendant's records do not reflect that plaintiff actually

2

took any leave under the FMLA in 2001. Affidavit of Becky Shannon [Doc. #20.6], ¶10; Affidavit of Christine Thomas [Doc. #20.14], ¶7. In her deposition, plaintiff admits that she has no idea how many FMLA leave days she took in 2001. Plaintiff's Deposition [Doc. #20.5], p.77. Plaintiff's deposition testimony indicates that her practice was first to exhaust her available paid leave before resorting to unpaid FMLA leave. Id. Given that defendant's records do not reflect any FMLA leave in 2001, any leave plaintiff took in 2001 related to her mother's medical needs appears to have been taken as paid vacation or paid personal leave. Plaintiff herself so indicated in her deposition: "I don't think I took unpaid leave in 2001." Id. at 75.[1]

Although the exact date of plaintiff's transfer to the new position of Manager of Financial Reporting is not established in the record, the change occurred no later than July 2, 2002. See Gehbauer Memo. [Doc. #24.2]. After that, plaintiff completed forms bearing dates between July 22, 2002 and August 15, 2002 to support requests for intermittent FMLA leave every other Friday. Request for Leave of Absence [Doc. #20.9]. Because the record fails to support the conclusion that plaintiff was actually taking FMLA leave before the job change, plaintiff's claim that the job change

---

[1] Plaintiff's attempt in her surreply to establish dates as early as March 2001 when she took FMLA leave is unavailing. Plaintiff relies on her interrogatory answer in which she lists dates her work calendar indicates she took off work, but this list of dates does not establish that any of the leave was taken under the FMLA as opposed to paid vacation or personal leave.

was a violation of her FMLA rights is subject to summary judgment. Stated another way, plaintiff fails to make out a prima facie case with respect to the claim premised on the job change itself because plaintiff fails to show that at the time of the change, she had exercised rights afforded by the FMLA.[2]

Plaintiff also contends that her ultimate termination in January 2004 is actionable as retaliation for her exercise of FMLA rights. Although even plaintiff concedes that the final decisionmakers concerning the lay-off were Don Foster and Kathy Gentilozzi, not Gehbauer, plaintiff argues that defendant can nonetheless be liable under the FMLA if Gehbauer's recommendation of plaintiff for lay-off, adopted by Foster and Gentilozzi, was unlawfully motivated by FMLA retaliation. The Eighth Circuit is among those courts which have recognized the so-called "cat's paw" theory of liability, applicable where the ultimate decisionmaker acts as merely the conduit or "cat's paw" of the supervisor who urges an adverse employment action out of discriminatory animus:

> The rule provides that an employer cannot shield itself from liability for unlawful termination by using a purportedly independent person or committee as the decisionmaker where the decisionmaker merely serves as the conduit, vehicle, or rubber stamp by which another achieves his or her unlawful design.

---

[2] Although it appears from the record that several years prior, in 2000, plaintiff had taken some leave under the FMLA in connection with her own gallbladder surgery, this leave is not alleged to have been a motivating factor in any adverse employment decisions. Instead, plaintiff's allegations here focus on the use of FMLA leave to care for her ailing mother.

4

Dedmon v. Staley, 315 F.3d 948, 949 n.2 (8th Cir. 2003). See also Kramer v. Logan County School District No. R-1, 157 F.3d 620 (8th Cir. 1998); Cross v. Cleaver, 142 F.3d 1059, 1074 (8th Cir. 1998).

> If [a committee] acted as the conduit of Lehnst's prejudice – his cat's-paw – the innocence of its members would not spare the company from liability. For it would then be a case where Lehnst, acting within (even if at the same time abusing) his authority as district manager to evaluate and make recommendations concerning his subordinates, had procured Shager's discharge because of his age.

Shager v. Upjohn Co., 913 F.2d 398, 405 (7th Cir. 1990).

The first two elements of plaintiff's prima facie case are clearly met, namely that plaintiff exercised rights under the FMLA and suffered an adverse employment action. McBurney v. Stew Hansen's Dodge City, Inc., 398 F.3d 998, 1002 (8th Cir. 2005). Plaintiff offers a colorable assertion of the cat's paw theory, in that Gehbauer recommended her for termination in the reduction in force, and Foster and Gentilozzi appear not to have made any independent determination of plaintiff's suitability for lay-off, but rather to have accepted and adopted the rationale offered by Gehbauer. Plaintiff's termination claim therefore survives summary judgment in light of disputed facts which, if ultimately found in plaintiff's favor, provide the causal connection between her exercise of FMLA rights and her selection for termination. Id.

The record contains disputes of fact concerning Gehbauer's reaction to plaintiff's use of FMLA leave in the years preceding her termination. If believed, plaintiff's testimony

5

concerning Gehbauer's demeanor and statements could support a conclusion that Gehbauer was highly resentful of plaintiff's use of FMLA leave to assist in her mother's care, and could support an inference that Gehbauer was motivated by plaintiff's use of FMLA leave to recommend her for lay-off, supported by the facially neutral rationale that her revamped position (also Grehbauer's doing) was highly expendable in that its duties could readily be redistributed. On this record, the Court is not persuaded that defendant is entitled to judgment as a matter of law on plaintiff's claim that her termination was unlawfully motivated by her use of FMLA leave.

Finally, plaintiff's pleadings contain a third distinct claim, namely a claim for emotional distress she alleges she suffered as a result of "Defendant retaliating against Plaintiff for taking intermittent leave by harassing her and then transferring her to the more vulnerable position...and then terminating her from her employment." First Amended Complaint [Doc. #18], ¶18. The majority view of the Courts of Appeals is that emotional distress damages are not recoverable under the FMLA because the statute's language limits recovery to "actual monetary losses of the employee such as salary and benefits and certain liquidated damages." Brumbalough v. Camelot Care Centers, Inc., ___ F.3d ___, 2005 WL 2861035 at *10 (6th Cir. Nov. 2, 2005). See also Montgomery v. Maryland, 72 Fed.Appx. 17, 19-20 (4th Cir. 2003); Walker v. United Parcel Service, Inc., 240 F.3d 1268, 1277

(10th Cir. 2001); Nero v. Indus. Molding Corp., 167 F.3d 921 (5th Cir. 1999); Graham v. State Farm Mutual Insurance Co., 193 F.3d 1274, 1284 (11th Cir. 1999); Cianci v. Pettibone Corp., 152 F.3d 723, 728 (7th Cir. 1998).

In gathering these holdings on the issue, the court in Brumbalough writes that "[t]he only circuit, among the ones that have reached this issue, that has allowed recovery of compensatory damages under the FMLA for compensation for 'mental anguish, loss of dignity, and other intangible injuries' is the Eighth Circuit," citing Duty v. Norton-Alcoa Proppants, 293 F.3d 481 (8th Cir. 2002). Examination of the Duty opinion, however, reflects that there the Eighth Circuit was not presented with an argument that the FMLA did not authorize emotional distress damages. Instead, the issue presented was the sufficiency of the evidence in support of the compensatory damages claim. Id. at 496. More recently, there has been an indication that the Eighth Circuit might agree with its sister circuits. In McBurney v. Stew Hansen's Dodge City, Inc., 398 F.3d 998, 1004 (8th Cir. 2005), Judge Lay writes in his dissent: "I concur with the majority on several important points:...second, damages for emotional distress...are not available under the Family Medical Leave Act." Because this Court finds the majority view persuasive, and because it does not appear that the Eighth Circuit has held, after focused consideration of the issue, that emotional distress damages are available under the FMLA, the Court finds as a matter of law that they are not, and

7

will grant defendant summary judgment on the emotional distress claim.

Accordingly, for all the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Doc. #21] is granted in part, as to plaintiff's claims that defendant violated the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §2611 *et seq.*, by transferring her to a new position in 2002 and by inflicting emotional distress on her. The motion is denied in part, as to plaintiff's claim that the termination of her employment violated the FMLA.

Dated this  18th  day of November, 2005.

/s/Donald J. Stohr
UNITED STATES DISTRICT JUDGE